UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GIOVANNA K.,

                      Plaintiff,

v.                                                    1:18-CV-0229
                                                    (TWD)
COMM'R OF SOC. SEC.,

                      Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

ERWIN, MCCANE & DALY                     J. KEVIN DALY, ESQ.
 Counsel for Plaintiff
23 Elk Street
Albany, New York 12207

U.S. SOCIAL SECURITY ADMIN.           ELIZABETH ROTHSTEIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Giovanna K. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9 and 10.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born in 1958, making her 55 years old at the alleged onset date and 58 years old at the date of the ALJ's decision. She reported completing the twelfth grade, and has previous work as a typist. Plaintiff alleged disability due to a back injury, diminished eyesight related to Graves' disease, and bilateral carpal tunnel syndrome.

   B.  **Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits on February 13, 2015, alleging disability beginning April 28, 2014. Her application was initially denied on April 17, 2015, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). She appeared at an administrative hearing before ALJ Charlie M. Johnson on January 27, 2017. (T. 45-90.[1]) On April 5, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 18-37.) On December 19, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

   C.  **The ALJ's Decision**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. (T. 23-32.) The ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and Plaintiff has not engaged in substantial gainful activity since April 28, 2014, the alleged onset date. (T. 23.) The

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

ALJ then determined Plaintiff's carpal tunnel syndrome and degenerative disc disease ("DDD") in the lumbar spine to be severe impairments. *Id*. He found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 24.) The ALJ then found Plaintiff has the RFC to perform sedentary work except

> [she] can lift and carry eight pounds occasionally; [she] can stand or walk on an occasional basis; [she] can sit, but requires the ability to stand or reposition herself at will; [she] can push and pull ten pounds occasionally; [she] can occasionally climb, bend, stoop, kneel, and squat; [she] can frequently use her upper extremities for reaching, simple grasping, and fine manipulation; [she] can frequently drive a motor vehicle and operate machinery; and [she] can frequently be exposed to temperature extremes, high humidity, and pulmonary irritants.

*Id*. He determined Plaintiff is unable to perform any past relevant work, but she acquired work skills from past relevant work. (T. 30-31.) The ALJ then found Plaintiff's acquired work skills are transferable to other occupations with jobs existing in significant numbers in the national economy, and therefore concluded Plaintiff is not disabled. (T. 31.)

D.   **The Parties' Contentions**

Plaintiff argues the ALJ erred in finding her impaired vision was not a severe impairment. (Dkt. No. 9 at 11-12.[2]) Plaintiff also asserts the ALJ erred in finding that she could perform other work existing in significant numbers in the national economy at Step Five. *Id*. at 12-16. Finally, Plaintiff argues the incomplete and inaccurate RFC does not include her visual impairment nor her carpal tunnel syndrome and was used by the vocational expert ("VE") to identify a single job. *Id*. at 15.

---

[2]   Page references to documents identified by docket number refer to the page numbers inserted by the Court's electronic filing system maintained by the Clerk's Office.

In response, the Commissioner contends the ALJ correctly evaluated the severity of Plaintiff's impairments at Step Two, and properly evaluated the opinion evidence which supports the RFC finding. (Dkt. No. 10 at 7-19.) Defendant also argues Plaintiff failed to establish any further limitations stemming from carpal tunnel syndrome beyond those found in the ALJ's RFC for a modified range of sedentary work. *Id*. at 16-17. Therefore, the ALJ properly relied on the VE's testimony that an individual with Plaintiff's RFC and vocational factors could work as an intake registration clerk, a job existing in significant numbers in the national economy. *Id.*

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work

5

> experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Substantial Evidence Supports the ALJ's Analysis of Plaintiff's Impairments

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to do basic work activities. 20 C.F.R. § 404.1520(c). Basic work activities include walking, standing, sitting, lifting, carrying, pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §§ 404.1521(b)(1)-(5)). "Although the Second Circuit has held that this step is limited to 'screening out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y.

6

1995)). Overall, the claimant retains the burden of presenting evidence to establish severity. *Id.* (citing *Miller v. Comm'r of Soc. Sec.*, 05-CV-1371 (FJS/GJD), 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

This Court has indicated the failure to find a specific impairment severe at Step Two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing she adequately considered the evidence related to the impairment that is ultimately found non-severe. *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-CV-0236 (GLS/VEB), 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), *Report and Recommendation adopted by* 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic disorder severe at Step Two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered plaintiff's anxiety and panic attacks at those subsequent steps).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the

7

opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

At Step Two, the ALJ found Plaintiff has severe impairments including carpal tunnel syndrome and DDD in the lumbar spine status-post surgery. (T. 23.) Plaintiff argues the ALJ erred in finding her impaired vision was not a severe impairment and in discounting Dr. Wladis' opinion regarding the nature and extent of Plaintiff's visual impairment and its impact on her ability to do prolonged visual tasks and work. (Dkt. No. 9 at 11-12, 14.) The Court finds these arguments unpersuasive for the following reasons.

First, the ALJ found at least one severe impairment at Step Two and continued the sequential evaluation. (T. 23-32.) As discussed further below, the ALJ provided explanation showing he adequately considered the evidence related to the impairment that was ultimately found non-severe. *Fuimo*, 948 F. Supp. 2d at 269-70; *Reices-Colon*, 523 F. App'x at 798. The Court therefore finds any error by the ALJ in not finding Plaintiff's visual impairment severe to be harmless.

Next, the ALJ's analysis of Plaintiff's severe and non-severe impairments indicates careful consideration of these impairments and their impact on Plaintiff's ability to perform basic work activities. (T. 23-24.) Indeed, the ALJ acknowledged Plaintiff's diminished vision due to Graves' disease and found it is not a severe impairment because there was insufficient evidence in the record to establish it had or could be expected to significantly limit her ability to perform

8

basic work activities for a continuous period of at least twelve months. (T. 23.) The ALJ also acknowledged Plaintiff's hearing testimony that she is unable to work because her eyes are bad and stated Plaintiff testified she was able to read the papers in her representative's file even though they appeared blurry. (T. 23, 59-61, 68-69.) The ALJ noted evidence documenting Plaintiff's Graves' disease including her corrected vision of 20/25 in both eyes in December 2014 and 20/30 in the right eye and 20/25 in the left eye at the April 2015 consultative examination. (T. 24, 285, 427.)

The ALJ's analysis of Dr. Wladis' opinion reflects careful consideration of that opinion. (T. 24.) The ALJ noted Dr. Wladis' opinion that Plaintiff had significant difficulty with prolonged visual tasks and indicated that, although Dr. Wladis was a treating ophthalmologist, his opinion was afforded little weight because it was not consistent with the medical evidence of record. (T. 24, 439.) The ALJ pointed out that, while it was true Plaintiff's vision was measured to be 20/40 in the right eye and 20/100 in the left eye in April 2016, Dr. Wladis failed to acknowledge that this was Plaintiff's uncorrected vision on that date and that her corrected vision was 20/30 in the right eye and 20/40 in the left eye. (T. 24, 439, 469.) The ALJ concluded Plaintiff has had near normal corrected vision throughout the alleged period of disability and he therefore found her diminished vision due to Graves' disease is not a severe impairment. (T. 24.)

The Court finds that the ALJ provided sufficient explanation for his analysis of Dr. Wladis' treating opinion, including reasons for the weight afforded to said opinion. It was within the ALJ's purview to review all the evidence before him, resolving any inconsistencies therein, and making a determination consistent with the evidence as a whole. *See Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient

evidence provides for such."); *Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y., Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *see also Quinn v. Colvin*, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)); *West v. Comm'r of Soc. Sec.*, 15-CV-1042 (GTS/WBC), 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), *Report and Recommendation adopted by* 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing *Matta*, 508 F. App'x at 56). In weighing Dr. Wladis opinion and the other evidence of record, the ALJ supported his conclusions regarding Plaintiff's diminished vision due to Graves' disease with adequate reasoning and his findings are therefore supported by substantial evidence.

Finally, the ALJ's analysis at subsequent steps indicates he was cognizant of Plaintiff's non-severe impairment of diminished vision due to Graves' disease in making his findings at those steps. For example, within his RFC analysis, the ALJ noted Plaintiff reported she was sensitive to light due to Graves' disease in an April 2015 disability report. (T. 25, 233-41.)

For the reasons above, the Court finds substantial evidence supports the ALJ's findings at Step Two as well as his analysis of Dr. Wladis' opinion. Remand is therefore not required on these bases.

### B. Substantial Evidence Supports the ALJ's Analysis of the Opinion Evidence and Plaintiff's RFC

RFC is defined as "'what an individual can still do despite his or her limitations . . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in

an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal citations omitted). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits. *Burgess*, 537 F.3d at 128 (quoting *Melville*, 198 F.3d at 52; citing *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002); *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)). "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)). An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." *Hart v. Comm'r*, 07-CV-1270 (DNH), 2010 WL 2817479, at

*5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d)) (internal quotation marks omitted). "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

> ### *i.* ***The ALJ's Analysis of the Opinion Evidence***

The ALJ indicated that the opinion evidence was not consistent with the severity of symptoms and the degree of limitations that would preclude Plaintiff from performing any work. (T. 28.) The ALJ also noted the RFC was based on his review of Plaintiff's statements, the medical evidence, and the opinions of Drs. McCormack, Goran, Prezio, and Aguilar. (T. 30.)

The ALJ afforded significant weight to Dr. Aguilar's July 2014 opinion that Plaintiff was capable of performing light or sedentary work, noting Dr. Aguilar examined Plaintiff only once, but that his clinical observations supported his conclusion. (T. 28.) The ALJ also found Dr. Anguilar's conclusion that Plaintiff was capable of such work was generally consistent with the record as a whole. (T. 28, 372-79.)

The ALJ afforded significant weight to Dr. Prezio's April 2015 consultative opinion which indicated Plaintiff had mild-to-moderate limitations with respect to engaging in any prolonged standing, walking, squatting, kneeling, bending, or doing any heavy lifting as a result of her then-current back issues. (T. 28-29, 429.) The ALJ noted that although Dr. Prezio examined Plaintiff only once, his clinical observations supported his conclusions and his findings were generally consistent with the medical evidence of record. (T. 28-29.)

The ALJ afforded great weight to Dr. Goran's July 2015 opinion that Plaintiff was capable of performing sedentary work because his clinical observations supported his findings

12

and his findings were consistent with the record as a whole. (T. 29, 431-34.) The ALJ also afforded great weight to Dr. Goran's June 2016 opinion indicating Plaintiff was capable of performing a range of sedentary work, but noted he declined to adopt Dr. Goran's specific conclusions on Plaintiff's ability to sit, climb, bend, stoop, squat, and kneel. (T. 29, 440-43.)

The ALJ afforded significant weight to Dr. McCormack's April 2016 opinion indicating Plaintiff was capable of performing a range of light work, noting Dr. McCormack was Plaintiff's treating orthopedist and his findings were generally consistent with the medical evidence concerning her back issues. (T. 29, 456-58.) The ALJ ultimately concluded Plaintiff is limited to performing a range of sedentary work based on other opinions in the record, including Dr. McCormack's February 2017 opinion. (T. 29.) The ALJ afforded great weight to Dr. McCormack's February 2017 opinion indicating Plaintiff was capable of functioning at the light or sedentary exertional level, again noting he was Plaintiff's treating orthopedist and his findings were consistent with the medical evidence concerning Plaintiff's back issues. (T. 29, 533.)

Finally, the ALJ afforded little weight to the various statements from Dr. McCormack and Dr. Goran indicating Plaintiff was unable to return to work, completely disabled, or permanently disabled or that she had marked permanent disability. (T. 29-30, 366-71, 414-15, 438, 452-53, 462, 465, 468, 531-33.) The ALJ noted that the ultimate issue of disability is a matter reserved to the Commissioner and these statements appeared to be made in the context of a workers' compensation claim which uses a separate and distinct legal standard from the one employed by the Administration, thus making those determinations of limited relevance to a Social Security disability claim. (T. 30.) The ALJ also indicated the evidence of record including Dr. McCormack's February 2017 opinion did not establish that Plaintiff was completely unable to perform work at any exertional level. Id.

13

### ii. The Court's Analysis

Plaintiff argues the ALJ erred in determining her RFC by (a) failing to follow the treating physician rule regarding the opinions from Dr. Wladis and Dr. McCormack; (b) not including significant limitations caused by Plaintiff's documented eye condition; (c) failing to develop the record regarding her bilateral carpal tunnel syndrome; and (d) failing to discuss the exertional limitations associated with her carpal tunnel syndrome despite finding it severe. (Dkt. No. 9 at 12-16.) The Court finds these arguments unpersuasive for the following reasons.

The ALJ indicated he considered Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529 and SSR 96-4p. (T. 24.) The ALJ also noted he considered the opinion evidence in accordance with 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. *Id.* Further, the ALJ's overall decision indicates a detailed consideration of the various opinions of record, the medical evidence, and Plaintiff's testimony and activities of daily living. (T. 23-32.) The ALJ also provided specific reasons for the various weights afforded to the multiple opinions of record including explanation for the instances in which he rejected particular opinions or portions of opinions. (T. 28-30.)

While Plaintiff takes particular issue with the ALJ's treatment of the opinions from Dr. Wladis and Dr. McCormack, the Court's review indicates the ALJ adequately acknowledged the treating relationship these doctors had with Plaintiff and provided sufficient explanation for why their opinions were not afforded controlling weight, particularly those statements from Dr. McCormack indicating Plaintiff was completely disabled or permanently disabled or that she had a marked permanent disability. (T. 24, 29-30.) The ALJ's analysis indicates adequate consideration of the requisite regulatory factors in reviewing opinions from treating physicians.

Further, as noted in Section III.A. of this Decision and Order, it was within the ALJ's purview to review all the evidence before him including the various opinions of record, resolve any inconsistencies therein, and make a determination consistent with the evidence as a whole. *Bliss*, 2015 WL 457643, at *7; *Petell*, 2014 WL 1123477, at *10; *Quinn*, 199 F. Supp. 3d at 712; *West*, 2016 WL 6833060, at *5.

Although Plaintiff appears to argue the ALJ failed to develop the record regarding her bilateral carpal tunnel syndrome, the Court disagrees. (Dkt. No. 9 at 14-15.) Plaintiff does not point to evidence regarding this condition which the ALJ failed to pursue nor does she indicate what evidence is missing regarding this condition. Indeed, the ALJ certainly considered the condition because he found it to be a severe impairment and included specific limitations relating to lifting and carrying, pushing and pulling, reaching, simple grasping, fine manipulation, driving a motor vehicle, and operating machinery in the RFC. (T. 23-24.) It does not appear that there were any gaps in the record preventing the ALJ from properly considering this condition and its effect on Plaintiff's ability to do basic work activities. Therefore, the Court finds that the ALJ did not fail to develop the record regarding Plaintiff's carpal tunnel syndrome.

The Court's review of the record and the ALJ's overall decision does not support Plaintiff's argument that the ALJ erred in not including further limitations relating to Plaintiff's eye condition in the RFC. (Dkt. No. 9 at 14.) As indicated in Section III.A. of this Decision and Order, substantial evidence supports the ALJ's analysis of Plaintiff's impairments at Step Two. Plaintiff has not established further limitations or that the ALJ failed to properly consider the evidence before him. The Court will not now reweigh that evidence which was before the ALJ. *See Warren v. Comm'r of Soc. Sec.*, 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a

plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . . [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), *Report and Recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health & Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)); *Lewis v. Colvin*, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); citing *Lamay*, 562 F.3d at 507).

For the reasons outlined above, the ALJ's analysis of the medical opinions and Plaintiff's RFC is supported by substantial evidence and he did not fail to develop the record regarding her carpal tunnel syndrome. Remand is therefore not required on these bases.

**C.     Substantial Evidence Supports the ALJ's Step Five Determination**

The burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). If a hypothetical question does

16

not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee*, 631 F. Supp. 2d at 211 (citing *Melligan v. Chater*, 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre*, 758 F.3d at 151 (citing 20 C.F.R. § 404.1520(a)(4)(v)). "'Courts have generally held that what constitutes a 'significant number' is fairly minimal.'" *Rosa v. Colvin*, 12-CV-0170 (LEK/TWD), 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2015) (quoting *Fox v. Comm'r of Soc. Sec.*, 02-CV-1160 (FJS/RFT), 2009 WL 367628, at *3 (N.D.N.Y. Feb. 13, 2009)). "[O]ther courts have found that as little as 10,000 jobs can constitute a significant number for the purpose of a Step Five finding." *Waldvogel v. Comm'r of Soc. Sec.*, 16-CV-0868 (GTS), 2017 WL 3995590, at *13 (N.D.N.Y. Sept. 11, 2017) (citing *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-31 (N.D.N.Y. 2015)).

Plaintiff argues the ALJ erred in finding that she could perform other work existing in significant numbers in the national economy at Step Five. (Dkt. No. 9 at 12-16.) Plaintiff contends (a) the RFC is incomplete and inaccurate in its lack of limitations related to her visual impairment or carpal tunnel syndrome; (b) the VE used the RFC to identify a single job which could be performed; and (c) the occupational base of work at the sedentary level is significantly eroded by the limitations resulting from Plaintiff's visual impairment, carpal tunnel syndrome, and inability to sit for any appreciable period of time. *Id.* The Court finds these arguments without merit.

As indicated in Sections III.A. and III.B. of this Decision and Order, the Court has found the ALJ's findings regarding Plaintiff's impairments and RFC are supported by substantial evidence, as is the ALJ's analysis of the opinion evidence. Additionally, Plaintiff has not established further limitations than those included in the ALJ's RFC determination related to her visual impairment, carpal tunnel syndrome, or inability to sit for any appreciable period of time.

Plaintiff appears to suggest that the single job identified by the VE in response to the ALJ's hypothetical question which reflected the RFC does not constitute a significant number of jobs in the national economy. (Dkt. No. 9 at 15.) The VE testified a hypothetical individual with Plaintiff's RFC and vocational factors could perform work as an intake registration clerk (Dictionary of Occupational Titles code 205.367-042), of which there were approximately 19,291 such jobs available in the national economy. (T. 31, 78-84.) For the reasons indicated above and because this number is higher than what other courts have found to be a significant number of jobs in the national economy, the ALJ's finding at Step Five is supported by substantial evidence. *Rosa*, 2013 WL 1292145, at \*9; *Waldvogel*, 2017 WL 3995590, at \*13. Remand is therefore not required on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED**.

Dated: May 13, 2019
Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge